UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard Harding SALISBURY, a/k/a
Heavy, Defendant-Appellant.

No. 80–9038
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 30, 1981.

Richard Harding Salisbury, pro se.

Steven R. Wisebram, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before HILL, VANCE and HATCHETT, Circuit Judges.

VANCE, Circuit Judge:

Defendant Richard Salisbury appeals his conviction of selling a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. §§ 2, 2313 and selling stolen property valued in excess of $5,000 in interstate commerce in violation of 18 U.S.C. §§ 2, 2315.[1] On appeal Salisbury urges three grounds for reversal. Finding no merit in any of his contentions, we affirm.

In 1978 the Federal Bureau of Investigation (FBI) began to investigate the large number of truck hijackings in the four state area surrounding Chattanooga, Tennessee. In the course of this investigation the FBI relied on an informer named Charles Wright, who had agreed with the local prosecutor in Fort Payne, Alabama to work with the FBI in an unspecified manner in exchange for a recommendation of a reduced sentence on several burglary charges.[2] Wright pretended to represent a buyer of stolen goods, and thereby managed to ingratiate himself with Salisbury and his codefendants. On January 26, 1979 Wright received and recorded two telephone calls from Robbie Hall, one of Salisbury's codefendants. During the conversations Hall and Wright agreed upon the sale of a load of stolen carpeting to be consummated in Adairsville, Georgia later that night. At 1:00 a. m. on January 27 Wright and an undercover FBI agent met with Hall, Salisbury and a third codefendant and purchased the carpeting for $4,500. Wright recorded the entire transaction with a hidden body microphone.

At trial the prosecution sought to admit these tapes into evidence. After holding a hearing outside the presence of the jury the district court admitted the recording of the conversations between Wright and Hall and the tape of the January 27 transaction. The district court also allowed limited testimony about a prior attempt by Salisbury to sell Wright a truckload of stolen tires. The jury convicted Salisbury and he was sentenced to a three year prison term for the stolen vehicle charge and a four year prison term for the stolen property charge, the sentences to run consecutively.

Salisbury first argues that the admission of the tape recordings of the telephone conversations and subsequent transaction violated 18 U.S.C. §§ 2511(2)(c), 2515 and the fourth amendment. Section 2515 mandates the suppression of any evidence gathered in contravention of section 2511, which makes it illegal to intercept any wire or oral communication, absent certain exceptions. This case is clearly covered by the exception set out in section 2511(2)(c), which provides that

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to

---

1. Salisbury was also indicted for transporting a stolen vehicle in interstate commerce in violation of 18 U.S.C. §§ 2, 2312 and transporting stolen merchandise worth over $5,000 in interstate commerce in violation of 18 U.S.C. §§ 2, 2314. He was acquitted on both of these counts.

2. Wright was also under indictment for burglary in Huntsville, Alabama. His involvement with the FBI, however, had no bearing on the disposition of those charges. He eventually was convicted in Huntsville and received a four year sentence.

the communication has given prior consent to such interception.

As Salisbury does not dispute that Wright was acting under color of law the only issue presented is whether Wright consented to record the disputed conversations.

Relying on *United States v. Laughlin*, 222 F.Supp. 264 (D.D.C.1963), Salisbury vigorously contends that Wright's consent was coerced because Wright was under indictment in Alabama and "had no viable choice but to cooperate" with the prosecutor's plea offer. Salisbury, however, has a mistaken notion of involuntariness. Unless he could demonstrate that Wright's will was "overcome by threats or improper inducement amounting to coercion or duress," *United States v. Silva*, 449 F.2d 145, 146 (1st Cir. 1971), *cert. denied*, 405 U.S. 918, 92 S.Ct. 942, 30 L.Ed.2d 787 (1972), Wright's consent was not involuntary for purposes of section 2511(2)(c). Wright may have hoped to benefit from his decision to cooperate with the government, but his free will was not overborne merely because his motive was self-serving. *See United States v. Juarez*, 573 F.2d 267, 278 (5th Cir.), *cert. denied*, 439 U.S. 915, 99 S.Ct. 289, 58 L.Ed.2d 262 (1978); *United States v. Osser*, 483 F.2d 727, 730 (3d Cir.), *cert. denied*, 414 U.S. 1028, 94 S.Ct. 457, 38 L.Ed.2d 221 (1973). Salisbury failed in his attempt to show that Wright's consent was involuntary. The tape recordings therefore fall within the statutory exception to the rule forbidding electronic surveillance.

■ Salisbury's argument that the surveillance violated his rights under the fourth amendment is spurious. An individual has no legitimate expectation that the person to whom he is speaking will not relate the conversation to the legal authorities. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). That rule applies with equal force to the recording of a conversation as to the repetition of one. *United States v. White*, 401 U.S. 745, 749–51, 91 S.Ct. 1122, 1124–25, 28 L.Ed.2d 453 (1971) (plurality opinion); *accord, United States v. Caceres*, 440 U.S. 741, 750–51, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733 (1979); *Lopez v. United States*, 373 U.S. 427, 439, 83 S.Ct. 1381, 1388, 10 L.Ed.2d 462 (1963).

■ Salisbury also argues that the tape of the January 26 conversations between Wright and Hall was inadmissible hearsay. Federal Rule of Evidence 801(d)(2)(E), however, states that coconspirator statements made during the course and in furtherance of a conspiracy do not constitute hearsay. Thus, if Hall and Salisbury were conspirators the tape recording was properly admitted into evidence. This issue is governed by our decision in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979). Statements of a coconspirator may be introduced into evidence even though the government has not charged Salisbury with conspiracy as long as the existence of the conspiracy has been properly established. *United States v. Freeman*, 619 F.2d 1112, 1123 (5th Cir. 1980), *cert. denied*, 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981). At trial the district court held a *James* hearing outside of the jury's presence and determined that there was sufficient independent evidence of a conspiracy. We find no error in this finding. The evidence of Salisbury's involvement in the actual sale of the carpet and his false exculpatory statements to FBI agents provided the requisite independent evidence of Salisbury's participation in a conspiracy.

■ Finally, Salisbury argues that the introduction of extrinsic offense evidence constituted reversible error under Federal Rules of Evidence 403[3] and 404(b).[4] To

---

**3.** Federal Rule of Evidence 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**4.** Federal Rule of Evidence 404(b) states:

Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

determine whether extrinsic offense evidence was properly admitted, we must apply the two-part test enunciated in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." *Id.* at 911 (footnote omitted).

 Although the government normally may not introduce evidence of a defendant's predisposition to engage in criminal activity in its case in chief, it may do so "once a defendant submits some evidence which raises the possibility that he was induced to commit the crime." *United States v. Mack*, 643 F.2d 1119, 1121 (5th Cir. 1981). The introduction of evidence of extrinsic offenses is a reliable method of proving the criminal predisposition needed to rebut the allegation or inference of entrapment. *United States v. Jones*, 473 F.2d 293, 294–95 (5th Cir.), *cert. denied*, 411 U.S. 984, 93 S.Ct. 2280, 36 L.Ed.2d 961 (1973). In the present case Salisbury raised the issue of entrapment at trial and received jury instructions to that effect. As the evidence adduced was not designed to demonstrate bad character, but was offered to show the predisposition necessary to rebut Salisbury's allegations of entrapment, the first prong of *Beechum* has been satisfied.

The second prong of *Beechum* has also been met because the prejudicial nature of the evidence did not substantially outweigh its probative value. The evidence was squarely on point as to Salisbury's criminal predisposition. There was little in the way of unfair prejudice to counterbalance the probative value of the evidence. The evidence was not of such a heinous nature as to incite the jury to make an irrational decision, *see United States v.*

order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

*McMahon*, 592 F.2d 871, 876 (5th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979), nor was the prior offense so irrelevant "as to lack probative force as to the offense charged and hence to invite punishment of the defendant because he is, for reasons other than the offense charged, one socially undesirable." *United States v. McKinney*, 429 F.2d 1019, 1032 (Godbold, J., *dissenting*), *rev'd on rehearing*, 434 F.2d 831 (5th Cir. 1970), *cert. denied*, 401 U.S. 922, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). Finally, the testimony adduced was not so detailed in its description of the prior offenses that a jury would equate the prior offense with that charged. Finding nothing in the record to indicate that the trial court incorrectly applied the *Beechum* test, we affirm its decision allowing this evidence into trial.

AFFIRMED.

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.