[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14938
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cr-20224-UU-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAYCOL MENDEZ MARADIAGA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 23, 2021)

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Maycol Mendez Maradiaga appeals his conviction for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).  On appeal, he raises four arguments.

First, Mendez Maradiaga asserts that the district court abused its discretion by allowing the government to cross-examine him about a 2012 arrest for possession of MDMA ("molly") because the government did not show that he committed the offense by a preponderance of the evidence.  He also asserts that the district court plainly erred by allowing the government to cross-examine him about his prior recorded drug sales to Marvin Reyes, a confidential informant ("CI") because, without transcripts of those conversations, the questioning violated  Fed. R. Evid. 404(b), Fed. R. Crim. P. 16, and the best evidence rule.

Second, Mendez Maradiaga argues that the district court abused its discretion by excluding his evidence that he did not participate in drug dealing outside of his involvement with Reyes.  Third, he contends that the district court abused its discretion by excluding his evidence about Reyes's prior bad acts because that evidence would show Reyes's motive in entrapping him and rebut the government's evidence.  Lastly, Mendez Maradiaga argues that the evidence was insufficient to support the jury's finding that he was predisposed to commit the offense.   We address each argument in turn.

I.

We "review evidentiary rulings for abuse of discretion." *United States v. Wenxia Man*, 891 F.3d 1253, 1264 (11th Cir. 2018). Accordingly, district courts enjoy wide discretion in making evidentiary rulings. *United States v. Stephens*, 365 F.3d 967, 973 (11th Cir. 2004). Evidentiary challenges raised for the first time on appeal are reviewed only for plain error. Fed. R. Crim. P. 52(b); *United states v. Charles*, 722 F.3d 1319, 1322 (11th Cir. 2013). Plain error occurs where: (1) there is an error; (2) that is plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Presendieu*, 880 F.3d 1228, 1237 (11th Cir. 2018).

In general, evidence of a defendant's prior crimes, wrongs, or other bad acts is not admissible to prove his character and show that he acted in accordance with that character on a particular occasion. Fed. R. Evid. 404(b)(1). However, this evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). Further, evidence of prior bad acts is not extrinsic, and thus is admissible, if it is (1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense. *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008).

3

To be admissible under Rule 404(b), evidence of prior bad acts must withstand a three-part test: (1) the evidence must be relevant to an issue other than character; (2) the probative value must not be substantially outweighed by its undue prejudice; and (3) the government must offer sufficient proof so that the jury could find that defendant committed the act.  *Id.* at 1267.

Although the government normally may not introduce evidence of a defendant's predisposition to engage in criminal activity, it may do so once a defendant submits evidence which raises the possibility that he was induced to commit the crime. *United States v. Salisbury*, 662 F.2d 738, 741 (11th Cir. 1981). The introduction of extrinsic offense evidence is a reliable method of proving the criminal predisposition needed to rebut the allegation of entrapment.  *Id.*

Rule 16 requires the government to disclose, upon the defendant's request, any: (1) relevant written or recorded statement by the defendant that is within the government's possession, custody, or control, and the government knows that it exists; (2) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and (3) the defendant's recorded testimony before a grand jury relating to the charged offense.  Fed. R. Crim. P. 16(a)(1)(B).  In addition, "[t]he best evidence rule, codified as Federal Rule of Evidence 1002, requires the

4

production of originals to prove the content of any writing, recording or photograph." *United States v. Guevara*, 894 F.3d 1301, 1309 (11th Cir. 2018); *see also* Fed. R. Evid. 1002. "The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." *Guevara*, 894 F.3d at 1309-1310.

It is well established that, when a defendant testifies in his own defense, the jury may disbelieve his testimony, conclude that the opposite of his testimony is true, and consider it as substantive evidence of his guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). This Court has found that the district court did not abuse its discretion in allowing the government to question a defendant about a prior drug arrest, without offering testimony from the arresting officers or lab reports about the drugs, because the prior arrest was probative to the defendant's charges on trial. *United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005).

Here, the district court did not abuse its discretion by admitting evidence of Mendez Maradiaga's prior arrest. Mendez Maradiaga is correct in noting that the government did not produce the arresting officer or a lab report with regard to the 2012 arrest. However, the arrest was relevant and probative to whether he was truthful in asserting that he had never sold drugs before his interactions with the government. *See* Fed. R. Evid. 404(b); *Salisbury*, 662 F.2d at 741. By asserting an entrapment defense, Mendez Maradiaga placed his predisposition to commit drug

5

offenses at issue and allowed the government to offer evidence that would establish that predisposition. *See Salisbury*, 662 F.2d at 741. As with the defendant in *Ramirez*, the district court did not abuse its discretion in allowing the government to question Mendez Maradiaga about a probative arrest that was directly related to his defense at trial. *See Ramirez*, 426 F.3d at 1354. Moreover, Mendez Maradiaga was not unduly prejudiced by the government's questioning because the district court allowed him to rebut it on redirect, and the jury was free to believe his testimony. *See Brown*, 53 F.3d at 314.

As to the transcripts, Mendez Maradiaga did not object to the use of the transcripts on Rule 404(b) or Rule 16 grounds. Thus, we review those arguments for plain error. *See Presendieu*, 880 F.3d at 1237. The district court did not plainly err in allowing Mendez Maradiaga to be cross-examined about his prior drug deals with Reyes.

First, the government did not quote from the recorded conversations, characterize those conversations, or ask Mendez Maradiaga about specific statements in those conversations. The government only asked whether Mendez Maradiaga, at any point during those prior deals, mentioned helping Reyes because of his troubles in Honduras. Thus, the government's failure to produce English translations of those transcripts did not violate the best evidence rule because the

government did not ask about the content of those conversations. *See Guevara*, 894 F.3d at 1309; Fed. R. Evid. 1002.

Similarly, the government's questioning did not violate Rule 16 because that rule does not require that the government translate a recorded statement, and the government did not utilize the transcripts on cross-examination. Fed. R. Crim. P. 16(a)(1)(B). Indeed, the district court later excluded use of the transcripts in accord with Mendez Maradiaga's objection and prevented the jury from reviewing the transcripts during their deliberation.

Lastly, as noted above, Mendez Maradiaga's entrapment defense allowed the government to offer evidence that would show that he was predisposed to commit the offenses in his indictment under Rule 404(b). *See Salisbury*, 662 F.2d at 741. Moreover, Mendez Maradiaga's prior drug deals were inextricably intertwined with the charged offenses because they occurred within a year of the deals at issue during his trial and were all with the government's CI. *See Ellisor*, 522 F.3d at 1269.  Mendez Maradiaga's testimony that he only sold drugs to Reyes to help him placed the veracity of his testimony at issue and allowed the government to inquire as to the reason for his prior drug deals with Reyes. *See Salisbury*, 662 F.2d at 741. Further, Mendez Maradiaga's counsel did not dispute that he received the recordings of prior drug sales, and the government notified the district court and Mendez Maradiaga that it intended to introduce evidence of his prior drug sales

7

under either the inextricably intertwined doctrine or Rule 404(b). Thus, the district court did not plainly err.  Accordingly, we affirm in this respect.

## II.

A defendant who has raised an entrapment defense is entitled to present evidence of specific conduct to show a lack of predisposition to commit the charged crime. *See United States v. Rutgerson*, 822 F.3d 1223, 1239-40 (11th Cir. 2016).

Here, the district court did not abuse its discretion in limiting Lampkins's and Mendez Maradiaga's testimony. Although the district court sustained the government's objections regarding Mendez Maradiaga's lack of involvement in drug deals outside of those with Reyes, it allowed him to testify to that lack of involvement during his cross-examination and redirect. On cross-examination, Mendez Maradiaga testified that he never sold drugs to anyone other than Reyes. Further, during his redirect, the district court permitted Mendez Maradiaga to testify that, between 2015 and 2019, he was not investigated for any drug deals that did not involve Reyes. Thus, the district court allowed Mendez Maradiaga to introduce evidence of his lack of drug dealing outside of his involvement with Reyes.

## III.

8

A defendant may, under some circumstances, introduce evidence concerning the criminal history, or prior bad acts, of a non-testifying confidential informant, pursuant to Rule 404(b). *See United States v. Stephens*, 365 F.3d 967, 974-75 (11th Cir. 2004).

Here, the district court did not abuse its discretion in excluding Mendez Maradiaga's evidence about Reyes's prior bad acts. As an initial matter, Mendez Maradiaga largely was able to elicit testimony about Reyes's prior bad acts, even though the district court sustained some of the government's objections. Indeed, Mendez Maradiaga elicited testimony showing that Reyes's motive to assist law enforcement was to remain in the United States, which was relevant to Mendez Maradiaga's argument that Reyes persuaded him to sell drugs. Further, Mendez Maradiaga has not established how Reyes's illegal reentries would have shown that Mendez Maradiaga was not predisposed to commit drug crimes. Moreover, the district court did not err in excluding evidence about Reyes's subsequent arrest in 2019 and his drug dealing activity after his transactions with Mendez Maradiaga in 2015. Fed. R. Evid. 404(b). Those acts occurred after the 2015 drug deals and do not establish Mendez Maradiaga's lack of predisposition to commit the drug crimes in his indictment. *Id.*; *Ellisor*, 522 F.3d at 1269.

Similarly, the district court did not abuse its discretion in excluding Vladimir's testimony, which concerned Reyes's subsequent drug arrest and was

9

not relevant to Mendez Maradiaga's entrapment defense, because the testimony focused on events that occurred years after Mendez Maradiaga's case. See Fed. R. Evid. 404(b). Additionally, the jury was already aware of Reyes's drug dealing because Mendez Maradiaga testified as such during trial. Finally, Vladimir's proffered testimony that Reyes used a "sob story" to persuade others to sell drugs was not relevant to whether Mendez Maradiaga was predisposed to commit drug crimes. *See* Fed. R. Evid. 404(b). Accordingly, we affirm in this respect.

IV.

Entrapment is generally a jury question. *United States v. Brown*, 43 F.3d 618, 622 (11th Cir. 1995). Therefore, entrapment as a matter of law is a sufficiency of the evidence inquiry. *Id.* When an entrapment defense is rejected by the jury, our review is limited to deciding whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction. *Id.* Further, a jury's verdict cannot be overturned if any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt. *Id.* We "review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the government and making [a]ll reasonable inferences and credibility choices . . . in favor of the government and the jury's verdict." *Wenxia Man*, 891 F.3d at 1264 (internal quotations omitted).

10

The entrapment defense has two elements: "(1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant." *Id.* The defendant bears the burden of production to show that the government induced him to commit the crime, and he can meet the burden by producing evidence that the government's conduct "created a substantial risk that the offense would be committed by a person other than one ready to commit it." *Id.*

If the defendant produces such evidence of inducement, the burden shifts, and the government must "prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." *United States v. Dixon*, 901 F.3d 1322, 1343 (11th Cir. 2018). Predisposition is a fact-intensive inquiry into the defendant's state of mind, and juries may consider evidence such as how readily he committed the crime and whether he had the opportunity to back out of it. *Wenxia Man*, 891 F.3d at 1270. "The government need not produce evidence of predisposition prior to its investigation." *Brown*, 43 F.3d at 625. Moreover, post-crime statements will support a jury's rejection of an entrapment defense, and the existence of prior related offenses is relevant, but not dispositive. *Id.*

Additionally, "[p]redisposition may be demonstrated simply by a defendant's ready commission of the charged crime." *United States v. Isnadin*, 742 F.3d 1278, 1298 (11th Cir. 2014) (internal quotations omitted). Further, "[a] predisposition finding is also supported by evidence that the defendant was given

11

opportunities to back out of illegal transactions but failed to do so." *Id.* Finally, the fact-intensive nature of the entrapment defense often makes jury consideration of demeanor and credibility evidence a pivotal factor. *Brown*, 43 F.3d at 625.

"The jury is free to choose among alternative reasonable interpretations of the evidence, and the government's proof need not exclude every reasonable hypothesis of innocence." *United States v. Tampas*, 493 F.3d 1291, 1298 (11th Cir. 2007). Inconsistent jury verdicts are generally insulated from review because "a jury may reach conflicting verdicts through mistake, compromise, or lenity," but "it is impossible to determine whose ox has been gored." *See United States v. Powell*, 469 U.S. 57, 68–69 (1984); *United States v. Mitchell*, 146 F.3d 1338, 1344 (11th Cir. 1998). Thus, "as long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an inconsistent verdict on another count." *Mitchell*, 146 F.3d at 1345.

Here, the government met its burden to show that Mendez Maradiaga was predisposed to commit the offense, because his meetings with Lampkins and Reyes showed that he possessed expertise in dealing drugs, and he referred to that expertise during those meetings. During the October 2015 meeting, Mendez Maradiaga used drug terminology in referring to the amount of cocaine that he had procured for Lampkins. Similarly, during the November 2015 deal, Mendez Maradiaga complained about the money that he was making from the deal and

stated that he had not "gotten [himself] out there like [he] want[ed] to." Indeed, Mendez Maradiaga stated that he had dealt with others involved in illegal drug dealing for years. Mendez Maradiaga further demonstrated his predisposition to commit drug crimes by stating that he had "a cat right here" who sold crack cocaine, when Lampkins asked Mendez Maradiaga if he knew anyone who dealt crack cocaine. He also stated that he was "getting back in the game." Further, Mendez Maradiaga admitted that he had engaged in four prior drug deals with Reyes before the offenses charged in his indictment. Mendez Maradiaga's statements during the transactions demonstrated his "ready commission" of the deals and showed his refusal to back out of the deals. *Isnadin*, 742 F.3d at 1298. Additionally, because Mendez Maradiaga testified in his own defense, the jury was free to disbelieve his assertion that he had never sold drugs before and was entitled to conclude the opposite. *Brown*, 53 F.3d at 314. Mendez Maradiaga's assertion that the jury's acquittal on Counts 1 and 2 shows that no reasonable jury could find him guilty on Count 3 is inapposite because this Court has held that inconsistent jury verdicts are generally insulated from review, and the jury's guilty verdict is supported by sufficient evidence. *Powell*, 469 U.S. at 68–69; *Mitchell*, 146 F.3d at 1344-45.

13

Accordingly, we affirm.[1]

**AFFIRMED.**[2]

---

[1] We need not address Mendez Maradiaga's assertion that cumulative error requires a new trial because his final claim necessarily fails, as there can be no cumulative error where there are no individual errors. *United States v. Azmat*, 805 F.3d 1018, 1045 (11th Cir. 2015).

[2] Mendez Maradiaga's motion to supplement the record is DENIED.