Milton Savage, Jr. v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-060-CR

MILTON SAVAGE, JR. APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

 I.  Introduction

Appellant Milton Savage, Jr. appeals his conviction for aggravated assault.  A jury found Savage guilty and assessed his punishment at twenty-five years’ confinement and a $5,000 fine.  The trial court sentenced him accordingly.  In two points, Savage contends that the trial court erred (1) by admitting extraneous bad acts evidence and (2) by overruling his objection to allegedly improper argument by the State.  We will affirm.

II.  Factual and Procedural Background

Savage and his girlfriend, Gabina Gosse, lived together in Gosse’s apartment.  On September 12, 2004, an upstairs neighbor called 911 because she heard a woman screaming in the apartment below.  Officer Kristi Nathan responded to the call, and when she knocked on Gosse’s door, Savage answered it.  He was sweating and wearing a white t-shirt that had a few small blood smears on it.  Savage told Officer Nathan that he and Gosse had been arguing because he was moving out but that nothing physical had happened. While Officer Nathan and Savage were talking, Gosse approached them from outside of the apartment.  She was crying, her hair was messed up, and she had blood on her lip and chin.  She told Officer Nathan that Savage had been threatening her and holding a knife to her throat for the last twenty minutes. Officer Andrea Fisher soon arrived to assist.  Gosse walked Officer Fisher through the apartment and explained what had just taken place.  Gosse said that she and Savage had been arguing, that she had told Savage that their relationship was over, and that she had put some of his things outside and locked the door.  Gosse said that she was sleeping on her couch when she heard Savage kick in her back door.  Savage entered her apartment and punched her in the face.  Gosse said that she tried to call 911, but Savage grabbed her cell phone from her and threw it across the room, breaking it into two pieces.  Gosse said Savage forced her into the bedroom and pinned her down on the bed.  Savage pulled two knives out from under the mattress and threatened her with them.  Gosse said that she escaped through the back door when Savage got up to answer Officer Nathan’s knock at the front door.  

Gosse wrote a narrative victim statement setting forth the same facts that she had told the officers.  She also filled out a domestic violence victim statement, and in answer to the question, “Has this person assaulted you before? When? Where? How?,” she responded, “Yes, [three] nights ago, the police were here.”  

The next morning, however, Gosse went to the police department and recanted her story.  She said that she had lied to Officers Nathan and Fisher because she was angry at Savage for moving out and because she wanted to get him in trouble.  She said that she had been drinking all day and had taken Valium.  She said Savage broke into her apartment because he was worried that she had overdosed.  She said that she threw her phone across the room because Savage wanted to call her sister-in-law to stay with her that night and that she screamed because she wanted Savage to stay with her.  The same day that Gosse recanted her story, she also filed a complaint against Officer Fisher.  She stated in her complaint that Officer Fisher had asked Gosse “why she was dating black guys.”  

At trial, Gosse testified that she lied to Officers Nathan and Fisher and that her second story was true.  She contended that Officer Fisher told her what her statement needed to say in order to hold Savage.  She also said that she told Officers Fisher and Nathan that she was intoxicated and that she had been taking drugs but that Officer Fisher told Gosse that she did not need to write that in her statement.  Gosse testified that she was not afraid of Savage and that he had never assaulted or threatened her.    

Prior to trial, Savage filed a motion in limine, asking the trial court to instruct the State not to mention any extraneous offenses without permission from the trial court.  After Gosse testified for the defense, the State informed the trial court that after the defense rested, it wished to call Barbara Giaimo to testify concerning Savage’s prior bad acts.  In accordance with Savage’s motion in limine, the court held a hearing outside the jury’s presence and overruled Savage’s objection to Giaimo’s testimony. 

The State then called Gosse’s upstairs neighbor, who testified that on September 9th, three nights before Savage allegedly assaulted Gosse, she heard a woman screaming and heard the sounds of a struggle coming from Gosse’s apartment.  The State then called Giaimo, who testified in the jury’s presence that she lived near Savage and Gosse and that on September 9th, she heard a woman screaming, “Help me, please, God help me, get out of here.”  Giaimo testified that she called 911 because she could see Savage inside the apartment with his arm around Gosse’s throat and stomach, pushing Gosse back towards the bedroom.  

After Giaimo testified, Gosse again took the stand.  She testified that Savage did not assault her on September 9th.  She explained that she lied in her victim statement when she wrote that Savage had previously assaulted her.

III.  
Extraneous Offense Testimony

In his first point, Savage contends that the trial court erred by allowing testimony of an extraneous offense.  Savage does not argue that Giaimo’s testimony is not relevant, but instead apparently contends that under Rule 403, the prejudicial nature of the testimony substantially outweighs any probative value it may have because the acts to which Giaimo testified are not criminal offenses.  
See
 
Tex. R. Evid.
 403.  The State responds that Giaimo’s testimony was properly admitted to rebut Gosse’s testimony that Savage had never assaulted her and also to rebut Savage’s defensive theory that Officer Fisher pursued Savage’s conviction to retaliate against Gosse for filing a complaint against the officer. 

Generally, evidence of other wrongful acts is not admissible to prove the character of the person to establish that he acted accordingly regarding the alleged offense.  
Montgomery v. State, 
810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh’g). An extraneous offense may be admissible, however, if it has relevance apart from its tendency to prove the character of a person in order to show that he acted in conformity therewith.  
Id.
 at 387.  Evidence that logically serves such purposes as “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident” is relevant beyond its tendency to prove conforming character.  
Id.
;
 
See
 Tex. R. Evid
. 404(b).  Extraneous offenses are also admissible to rebut a defensive theory or when a false picture is presented by the defense.  
See, e.g.
, 
Crank v. State
, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) (“Probably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory.”), 
cert. denied
, 493 U.S. 874 (1989),
 overruled on other grounds by Alford v. State
, 866 S.W.2d 619, 624 n.8 (Tex. Crim. App. 1993); 
Albrecht v. State
, 486 S.W.2d 97, 100-01 (Tex. Crim. App. 1972) (“Evidence of extraneous offenses committed by the accused has been held admissible . . . to refute a defensive theory raised by the accused.”); 
Yohey v. State
, 801 S.W.2d 232, 236 (Tex. App.—San Antonio 1990, pet. ref'd) (“As a general rule the State is entitled to present, on rebuttal, any evidence that tends to refute the defensive theory. . . . The possibility that such rebuttal evidence may encompass extraneous offenses or acts on the part of the defendant does not preclude its admission into evidence.”).

Here, it is clear that the trial court admitted the extraneous offense evidence concerning the September 9th incident to rebut Savage’s defensive theories that Gosse lied in her statement to the officers, that Gosse was not afraid of Savage and also lied when she indicated that he had previously assaulted her on September 9th, and that Officer Fisher orchestrated Savage’s prosecution to retaliate against Gosse because Gosse filed a complaint against Fisher.

We next apply the Rule 403 balancing factors set out in 
Montgomery
 to determine whether the trial court abused its discretion by determining that the probative value of the September 9th extraneous offense evidence was not greatly outweighed by its prejudicial effect.  First we examine how compellingly Giaimo’s testimony shows that Gosse was afraid of Savage and that Savage had in fact assaulted Gosse on September 9th.  Savage’s defense attorney contended at trial that Gosse made up her initial story to the police, and Gosse herself testified that she was not afraid of Savage and had never been attacked by him.  The State answered this contention with Giaimo’s testimony that three days before the incident at issue, she heard a woman screaming and saw Savage pushing Gosse.  Giaimo’s testimony makes it at least somewhat more likely that Gosse lied when she said she was not afraid of Savage and when she said Savage had never assaulted her. 

Moreover, it is doubtful that Giaimo’s testimony impressed the jury in some irrational way; the prior act that Giaimo testified to was no worse than the charged offense.  Additionally, the jury had already heard testimony from Gosse’s upstairs neighbor that on September 9th, she also heard a woman repeatedly screaming “help me” from Gosse’s apartment and that she heard a struggle “like [Gosse] was being hit and pushed against the wall.”  The State did not spend an excessive amount of time developing the extraneous evidence during the guilt-innocence phase; the testimony in front of the jury amounts to 14 pages from a 274-page record.  
Cf. Booker v. State
, 103 S.W.3d 521, 536 (Tex. App.—Fort Worth 2003, pet. ref’d) (op. on reh’g) (noting third 
Montgomery
 factor weighed in favor of excluding extraneous offense when trial time spent proving extraneous offense exceeded time spent proving charged offense).  Furthermore, the State needed Giaimo’s testimony because Gosse testified that the charged offense never took place.  The evidence of an extraneous act showing Savage’s behavior towards Gosse just three days before the alleged aggravated assault at issue was necessary to rebut Gosse’s claim that she lied in her statement to the police and to rebut the defense’s “frame up” theory that Officer Fisher pursued Savage’s conviction to retaliate against Gosse for filing a complaint against her.  
See Waddell v. State
, 873 S.W.2d 130, 136 (Tex. App.—Beaumont 1994, pet. ref'd) (holding that extraneous bad acts were logical and necessary rebuttal of major defense theory of fabrication). 

Our review of the record and the relevant criteria under Rule 403 demonstrates that the probative value of Giaimo’s testimony was not substantially outweighed by its prejudicial impact.  Consequently, we hold that the trial court did not abuse its discretion by admitting Giaimo’s testimony regarding Savage’s extraneous offense.  
See Montgomery
, 810 S.W.2d at 392-93.  We overrule Savage’s first point.  

IV.  Alleged Improper Argument

At trial, the State presented testimony from Officers Nathan and Fisher that it was common for victims of family violence to recant their initial statements to police.  In closing argument, the State’s attorney discussed how the jury should decide a conflict in testimony: 

[Prosecutor 1]: Now, in voir dire [Prosecutor 2] talked to you about how do you decide a case when [there are] conflicts in testimony.  How do you do that?  You’ve got Party A coming and saying one thing, Party B coming and saying another thing.  You’re the jury.  You decide how do you do that.  And then he went a step further and asked you, how do you do it in a case where the two stories, A and B, are coming from the same person?  You’ve got a victim of a crime who at first says they are a victim of a crime and then says they’re not.  And everybody in here said two things: Number one, generally speaking, . . . all of you agreed, one of you even specifically said, whatever came out first - -

[Defense attorney]:  I’m going to object, Your Honor.  That’s asking them to consider facts that are not in evidence.

The Court:  Sustained.

[Defense attorney]:  I’d ask the jury be instructed to disregard.

The Court:  The very last portion of the argument, I will instruct the jury to disregard.

[Defense attorney]:  I’d ask for a mistrial.

The Court:  Denied.

[Prosecutor 1]: 
 Whatever comes out first tends to be more reliable. 
The next - -

[Defense attorney]:  Objection, Your Honor.  That assumes facts not in evidence.

The Court:  Overruled.  [Emphasis added.]

In his second point, Savage contends that the trial court erred by overruling his objection to the above-italicized final argument by the State during the guilt-innocence phase.  Specifically, Savage complains that the prosecutor’s statement that “[w]hatever comes out first tends to be more reliable” was an “invitation to consider evidence outside the record . . . [in] an attempt by the State to bolster their entire case with evidence that was not before the jury.”  The State argues that the comment was a summation of the testimony of two police officers, that it was a reasonable deduction from that testimony, or alternatively, that it was common knowledge. 

To be permissible, the State’s jury argument must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

One permissible area of jury argument is the making of reasonable deductions from the evidence.  
Gaddis v. State
, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988).  Counsel is allowed wide latitude in drawing inferences from the evidence, so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.  
Id
.  The purpose of closing argument is to assimilate the evidence to assist the fact finder in drawing proper conclusions from the evidence.  
Id
. at 400.  The jury is then free to accept or reject such conclusions and inferences. 
Id
. 

Here, the State read to the jury portions of Gosse’s written statements in which she said that Savage assaulted her, and the jury heard Gosse’s testimony that she lied in those statements.  The jury heard Officers Nathan and Fisher testify that it is very common for victims of domestic violence to recant their initial statements to police officers.  A reasonable deduction from the officers’ statements is that the first statement of a domestic violence victim is more reliable than the second statement, i.e., that a domestic violence victim typically tells the truth in her first statement but commonly later recants that statement.  
See generally Hudson v. State
, No. 01-00-00431-CR, 2001 WL 1587337, at *3 (Tex. App.—Houston [1st Dist.] Dec. 13, 2001, pet. ref’d) (not designated for publication) (restating social worker’s testimony that reasons for domestic violence victim to recant her accusations include abuser’s financial support, abuser’s promising to get help, and abuser’s threatening victim into recanting).  Thus, we hold that the complained of arguments constituted a reasonable deduction from the evidence and were proper.  
See Felder
, 848 S.W.2d at 94-95.  We hold that the trial court did not err by overruling Savage’s objection to the prosecutor’s jury argument.  We overrule Savage’s second point.

V.  Conclusion

Having overruled both of Savage’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: December 8, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P. 
47.4.