United States Court of Appeals,

Eleventh Circuit.

No. 96-8891.

UNITED STATES of America, Plaintiff-Appellee,

v.

James Edward MITCHELL, Defendant-Appellant.

July 24, 1998.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:95-CR-562-1), Robert L. vining, Jr., Judge.

Before ANDERSON and MARCUS, Circuit Judges, and HANCOCK[*], Senior District Judge.

MARCUS, Circuit Judge:

Appellant James Edward Mitchell appeals his conviction for bank robbery and the sentence the district court imposed upon him. Mitchell argues that the jury verdict cannot stand because the jury's conviction of Mitchell on charges of armed bank robbery irreconcilably conflicts with its acquittal of Mitchell on charges of using a firearm during the commission of the bank robbery. Mitchell also contends that he was charged in a single count with violating *both* 18 U.S.C. § 2113(a) and 18 U.S.C. § 2113(d), but the jury was not provided with instructions that would enable it to know that it could convict Mitchell of 18 U.S.C. § 2113(a) as a lesser-included offense of 18 U.S.C. § 2113(d). Because conflicting verdicts do not provide a basis for reversal of a conviction, and because the district court did not err in its instructions to the jury, we decline Mitchell's invitation to reverse the conviction. We also reject Mitchell's challenge to his sentence, and, accordingly, we affirm the rulings of the district court.

[*]Honorable James H. Hancock, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

I.

A brief factual description of the robbery is necessary to our analysis. The story begins on the morning of March 20, 1995, when an armed car-jacker stole a white rental Buick with an Oklahoma license tag from the businessman who rented it when he stopped to make a telephone call. Later that morning, four individuals rode in the stolen white Buick to the First Union Bank. When they arrived, the vehicle occupants rushed into the bank. As this occurred, a witness called 911 to report an apparent robbery. The robbers burst through the bank doors, shouted that they were robbing the bank, and ordered all present to drop to the floor. Inside the bank, only an armed security guard standing in the customer area and two other employees, Karmen Hardnett and Margaret Ware, were present. Ware observed the largest of the four robbers push a handgun against the security guard and quickly disarm him. She then dropped to the floor behind the counter. Hardnett immediately fell to the floor as the robbery began and crawled into the employee lounge at the far end of the teller counter. There she hid behind a partially open door, from which Hardnett periodically observed some of the robbers' activities.

Two other robbers vaulted the counter and landed behind the teller line. As they did this, a gun held by one of the robbers discharged, the bullet passing through the counter and lodging into the carpet within three feet of Ware. Hardnett watched one of the robbers who had jumped the counter put his foot on Ware's back and place a gun to her head, while the other searched for money. When a customer appeared at the drive-through window, the robbers became startled and scrambled out of the bank, carrying with them the security guard's weapon and more than $6,000 stolen from the bank.

2

As the bandits fled the bank, D.R. Jones, a bank customer and off-duty police officer who had just arrived at the bank, followed the robbers as they sped away in the white Buick to a large shopping mall parking lot. In the parking lot, Jones observed four men walk away from the getaway car, pair off, and enter two separate vehicles. When these cars left the mall headed in separate directions, Jones followed a white Chrysler, which the apparent leader drove. During the pursuit, Jones enlisted the assistance of a uniformed police officer in a squad car who was responding to the bank robbery alarm. Within a few minutes, they stopped the Chrysler, and the occupants, Anthony Hazel and Jonathan Jackson, were arrested. The police found three handguns at the scene of the arrest, including one belonging to the security guard. Tests later showed that one of the recovered weapons had been discharged at the bank. Also at the arrest scene, the police found a rental car key in the Chrysler. Later investigation demonstrated that the key matched the white getaway car stolen from the Florida businessman and abandoned at the shopping mall.

In October 1995, just before their trial was set to begin, Hazel and Jackson decided to plead guilty and cooperate. They identified Trevis Ruger as the third robbery participant and the car-jacker. Through their prior employment at a fast-food restaurant, Hazel and Jackson both knew Ruger well. Hazel and Jackson could identify the fourth participant only as "James," but they noted that "James" was Ruger's friend and that "James" had also worked at the fast-food restaurant with them.

Based on these leads, the Federal Bureau of Investigation ("FBI") identified defendant James Edward Mitchell as the fourth participant in the bank robbery. Mitchell was arrested in late

3

November 1995, and he was indicted on two counts:  (1) violation of 18 U.S.C. §§ 2113(a),[1] 2113(d),[2] and 2,[3] and (2) aiding and abetting others who used guns during the bank robbery in violation of 18 U.S.C. §§ 924(c)[4] and 2.

---

[1]18 U.S.C. § 2113(a) provides as follows:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association;  or
>
> Whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny—
>
> Shall be fined under this title or imprisoned not more than twenty years, or both.

[2]18 U.S.C. § 2113(d), in relevant part, provides as follows:

> Whoever, in committing, or in attempting to commit, any offense defined in subsection[ ] (a) ... of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined ... or imprisoned not more than twenty-five years, or both.

[3]18 U.S.C. § 2 provides as follows:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

[4]In relevant part, 18 U.S.C. § 924(c) provides as follows:

(c)(1) Whoever, during and in relation to any crime of violence ... (including a crime of violence ... which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United

4

In March 1996, Ruger pled guilty to the charges against him and agreed to testify for the government at Mitchell's trial. At the trial, Hazel, Jackson, and Ruger all identified Mitchell as the fourth participant in the robbery. They testified that Hazel and Jackson formed the plan and enlisted Ruger to aid them. Hazel directed that Ruger find a fourth person to participate as well. Mitchell's co-conspirators testified that on the day before the robbery, the four men met at a Dairy Queen to plan the event. They drove to the bank site to surveil the area. Ruger also testified that Hazel supplied guns for Mitchell and him. The four agreed to meet the next morning at a nearby shopping mall located near the bank. Ruger stated that he picked up Mitchell on the morning of the robbery, and they drove to the mall to meet the others. At the mall Ruger and Mitchell entered Hazel's car and drove to the bank, where the group let Jackson out to observe the level of security. Meanwhile, Ruger stole the white Buick at gunpoint and drove to the bank for Jackson. The two met Hazel and

---

States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release....

...

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Mitchell back at the mall. Hazel testified that upon arriving at the bank, Mitchell's job in the robbery was to enter the bank, remain near the door, and secure the entrance.

Mitchell did not testify at his trial. He did, however, call several witnesses who attempted to provide an alibi defense for him.

The district court submitted the case to the jury, employing the government's proposed instructions on the alleged criminal violations without objection from Mitchell. With regard to Count One, the robbery charges, the district court instructed the jury that, to return a guilty verdict, it must find, among other facts, "that the Defendant either assaulted or put in jeopardy the life of some person by the use of a dangerous weapon or device while engaged in taking the property or money, as charged."[5] With respect to Count Two, the district court again instructed the jury

---

[5]In relevant part, the instruction on Count One provided as follows:

> Title 18, United States Code, Section 2113(a) and (d), makes it a Federal crime or offense for anyone to take from the person or presence of someone else either by force and violence or by intimidation any property or money in the possession of a federally insured bank and in the process of so doing to assault any person or put in jeopardy the life of any person by the use of a dangerous weapon or device.

> The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

*First:* That the Defendant took from the person or the presence of a person as described in the indictment, money or property then in the possession of a federally insured bank as charged;

*Second:* That the Defendant did so either by means of force or violence or by means of intimidation;

*Third:* That the Defendant either assaulted or put in jeopardy the life of some person by the use of a dangerous weapon or device while engaged in taking the property or money, as charged; and

6

pursuant to the government's proposed instructions, notably without any objection from defendant. These instructions provided that, to find Mitchell guilty of carrying or using a gun in violation of 18 U.S.C. § 924(c)(2), the jury must conclude, among other facts, that "the Defendant knowingly used or carried the firearm described in the indictment while committing [the] crime of violence [charged in Count One]."[6] The district court also provided the jury with a general verdict form.[7]

---

*Fourth:* That the Defendant acted knowingly and willfully.

....

[6]In relevant part, the jury instructions on Count Two read as follows:

> Title 18, United States Code, Section 924(c)(2), makes it a separate Federal crime or offense for anyone to use or carry a firearm during and in relation to the commission of some other Federal crime of violence.
>
> The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

*First:* That the Defendant committed the felony offense charged in Count One;

*Second:* That such offense was a "crime of violence"; and

*Third:* That the Defendant knowingly used or carried the firearm described in the indictment while committing such crime of violence.

....

[7]The verdict form stated, in relevant part, as follows:

> We, the jury, find the defendant, JAMES EDWARD MITCHELL,
>
> as to count one;
>
> as to count two.

....

7

On the second day of deliberations, the jury sent a note to the district court judge stating that it was deadlocked. After asking the jury foreperson several questions, the district court instructed the jury to resume deliberations. Approximately two hours later, the jury returned a verdict convicting Mitchell of Count One and acquitting him of Count Two.

In sentencing Mitchell, the district court assessed a seven-level adjustment pursuant to section 2B3.1(b)(2)(A), U.S. Sentencing Guidelines Manual, because a firearm was discharged during the robbery. Mitchell did not object to the enhancement. Defendant now challenges his sentence and conviction on appeal.

II.

Whether inconsistent verdicts render a conviction improper constitutes a question of law. *See United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Consequently, we consider this issue *de novo.* Because Mitchell did not raise objections to the jury instructions, verdict form, or seven-level upward adjustment to his sentence, we review these matters for plain error. *United States v. Kramer,* 73 F.3d 1067, 1074 (11th Cir.) ("We review assertions of error which were not objected to at trial for plain error.") (citing Rule 52(b), Fed.R.Crim.P., and *United States v. Olano,* 507 U.S. 725, 732-34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)), *cert. denied,* --- U.S. ----, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996); *United States v. Stevenson,* 68 F.3d 1292, 1294 (11th Cir.1995) ("This Court "consider[s] sentence objections raised for the first time on appeal under the plain error doctrine to avoid manifest injustice.' ") (quoting *United States v. Hansley,* 54 F.3d 709, 715 (11th Cir.1995) (quoting *United States v. Newsome,* 998 F.2d 1571, 1579 (11th Cir.1993), *cert. denied,* 510 U.S. 1062, 114 S.Ct. 734, 126 L.Ed.2d 698 (1994)), *cert. denied,* 516 U.S. 999, 116 S.Ct. 539, 540, 133 L.Ed.2d 444 (1995)).

To find reversible error under the plain error standard, we must conclude that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights. *See United States v. Vazquez,* 53 F.3d 1216, 1221 (11th Cir.1995); *Olano,* 507 U.S. at 733-34, 113 S.Ct. 1770. Error exists where a legal rule was violated during the district court proceedings, and the defendant did not knowingly and intelligently waive his right to object to the violation. *See id.* at 733-34, 113 S.Ct. 1770. " 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' " *Id.* at 734, 113 S.Ct. 1770. Accordingly, the Supreme Court has stated that a court of appeals may not correct an error pursuant to Rule 52(b) "unless the error is clear under current law." *Id.* The Supreme Court has recently clarified this statement of the law to find error, in addition, in cases where, although no error occurred under the clearly settled law at the time of trial, the ruling in question is clearly contrary to the law at the time of appeal. *See Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). Finally, where the first two prongs of the plain error rule established by *Olano* are satisfied, the defendant bears the burden of demonstrating that the plain error " 'affec[ted] substantial rights.' " *Olano,* 507 U.S. at 734, 113 S.Ct. 1770 (quoting Rule 52(a), Fed.R.Crim.P.). In most cases, this means that the "error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.* Where all of these elements are demonstrated, we have discretion to order correction of the error and will do so " 'in those circumstances in which a miscarriage of justice would otherwise result.' " *See id.* at 736, 113 S.Ct. 1770. We will, for example, correct a plain forfeited error when it results in the conviction or sentencing of an actually innocent defendant. *See id.* Additionally, we will reverse for plain error affecting substantial rights "if the error 'so seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *See id.*

9

III.

A.

Mitchell first argues that we should reverse his conviction because the jury returned inconsistent verdicts. Specifically, Mitchell notes that the jury acquitted him of violating 18 U.S.C. § 924(c), which provides additional penalties for carrying a firearm during the commission of specified crimes, including violation of 18 U.S.C. § 2113(d), yet the jury found Mitchell guilty of violating 18 U.S.C. § 2113(d), which prohibits individuals from "put[ting] in jeopardy the life of any person by the use of a dangerous weapon or device." Arguing that it is a logical impossibility to be not guilty of violating section 924(c), and, at the same time, be guilty of violating section 2113(d), Mitchell contends that his conviction must be reversed.

In support of his contention, Mitchell cites to *United States v. Nelson,* 574 F.2d 277 (5th Cir.1978). In *Nelson,* White, the defendant, was indicted on two counts. As in the case under review, Count One charged White with violations of 18 U.S.C. § 2113(a) and (d), and Count Two charged him with a violation of § 924(c)(1). Notably, during its deliberations, the jury asked the trial court the following questions: "Can one person be convicted on Count One and not Count Two? If one had knowledge of a weapon, would this constitute use of a weapon?" The district court responded in writing, answering, "1. Yes, one person can be convicted of Count One and be found "not guilty' of Count Two. 2. If one defendant had knowledge of a weapon this would constitute use of a weapon so long as that defendant aided and abetted and assisted the other defendant who did use the weapon." Soon thereafter, the jury returned a verdict of "guilty" on Count One and "not guilty" on Count Two. On appeal, our predecessor Court found the inconsistent verdicts troubling and reversed the conviction on 18 U.S.C. § 2113(d). *See id.* at 279-80.

10

Noting that the *Nelson* Court described the inconsistent verdicts in that case as a "logical impossibility," 574 F.2d at 282-83, Mitchell analogizes his case to *Nelson* and claims that he, too, is entitled to reversal of his conviction on Count One. We are not persuaded. Two significant problems with Mitchell's argument exist: first, *Nelson* is distinguishable in a most material way from the instant case; and second, to the extent that the *Nelson* panel actually rested its reversal of Nelson's section 2113(d) conviction on the mere fact that the jury returned inconsistent verdicts, *Nelson* is no longer good law in light of unambiguous Supreme Court precedent.

First, *Nelson* plainly differs from the case at hand. In the *Nelson* case, the defendant claimed, among other things, that the district court's answers to the jury's questions may have misled the jury in that Count One included a charge that did not require a gun (§ 2113(a)) and a charge that did (§ 2113(d)). Thus, when the district court answered the jury's question regarding finding a person guilty on Count One and not guilty on Count Two, it may have misled the jury into believing that its guilty verdict on Count One was really a guilty verdict on the § 2113(a) claim only, not the § 2113(d) claim, thereby allegedly creating the claimed inconsistent verdict. As the Court noted, "But for the erroneous instruction, the jury would have had two choices. It could have found appellant White guilty of the 18 U.S.C. § 2113(a) offense simple bank robbery and acquitted him of the 18 U.S.C. § 2113(d) and 18 U.S.C. § 924(c)(1) offenses involving the gun, or it could have convicted him of the latter two offenses." *Nelson,* 574 F.2d at 282. Because of the district court's responses to the jury's questions, it is not at all clear whether the jury thought it was convicting White on subsection (a) or (d) of Section 2113. "When there is no way of knowing for which offense a properly instructed jury would have found an appellant guilty," some corrective action is necessary. *Id.* (citing *Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961)).

11

The facts of this case, however, are materially distinguishable from those of *Nelson.* In this case, unlike the implication created by the district court's answers to the *Nelson* jury, the district court here instructed the jury that it *must* find that a dangerous weapon or device (i.e., a gun, among other things) was involved in order to convict appellant under Count One. Because jurors take an oath to follow the law as charged and we "expect[ ] [them] to follow it[,]" *United States v. Powell,* 469 U.S. 57, 66, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), it is fair to conclude that the jury in the case at hand convicted appellant of the (d) subsection of Section 2113. Accordingly, unlike in *Nelson* and *Milanovich,* it is not impossible to determine the offense on which the jury convicted Mitchell.

We further note that in the absence of any objection from Mitchell, the failure of the district court to instruct the jury separately on the lesser-included offense of 18 U.S.C. § 2113(a) did not constitute error of any sort. Indeed, in a capital murder case, we have stated: "[R]equiring a district court to give a lesser included offense instruction might be at odds with the trial strategy of defense counsel. Trial judges should be sensitive to and respectful of such difficult decisions made by counsel." *United States v. Chandler,* 996 F.2d 1073, 1099 (11th Cir.1993), *cert. denied,* 512 U.S. 1227, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994).

Second, to the extent that the holding in *Nelson* rests on the proposition that inconsistent verdicts standing alone justify reversal, it does not remain viable. The Supreme Court has plainly determined that jury verdicts are "insulate[d] from review" on the ground that they are inconsistent. *United States v. Powell,* 469 U.S. 57, 68-69, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *see also Dunn v. United States,* 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In *Powell,* the defendant was indicted on a number of counts for violations of the federal narcotics laws. The jury acquitted her of charges alleging conspiracy to possess cocaine with intent to distribute it and possession of

12

cocaine with intent to distribute it, yet found the defendant guilty of using the telephone in "committing and in causing and facilitating" the alleged conspiracy and possession in violation of 21 U.S.C. § 843(b). The Ninth Circuit reversed the conviction, finding that an acquittal on the predicate felony necessarily resulted in the conclusion that insufficient evidence to support the telephone facilitation conviction existed and mandated acquittal. The Supreme Court disagreed, holding that consistency in the verdicts is not required.

Several reasons for this rule exist. First, a jury may reach conflicting verdicts through "mistake, compromise, or lenity." *Powell,* 469 U.S. at 65, 105 S.Ct. 471. Based on the verdict alone, it is impossible to determine "whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." *Id.* Additionally, determining which party benefitted from an inconsistent verdict would require inquiry into the jury's thought processes, a procedure courts have always rightly resisted. *See id.* at 67, 105 S.Ct. 471. Finally, a defendant is afforded protection against "jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* And we are regularly called upon to assess whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt. *Id.* Moreover, this review is wholly distinct from the jury's conclusion that the evidence on another count was insufficient. Consequently, as long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an inconsistent verdict on another count. *See id.* at 67, 105 S.Ct. 471.

In the case under review, the evidence amply supports the jury finding of guilty as to Count One. All of the other participants in the bank robbery identified Mitchell as the fourth conspirator.

Moreover, they knew him not only from the robbery, but also because all four of the robbers had previously worked together. Accomplice Ruger also testified that Hazel had provided Mitchell and him with guns for the robbery. If the jury chose to believe this testimony, which it obviously did, the jury could have readily found that Mitchell was involved in the robbery. It is also undisputed that during the course of the robbery, a gun discharged very close to one of the bank's employees. Consequently, once the jury concluded that Mitchell had engaged in the robbery, sufficient evidence existed to prove that he had also violated section 2113(d) by jeopardizing a person's life through the use of a firearm during the commission of the robbery. Because we find that the evidence was sufficient to support the guilty verdict on Count One, we reject Mitchell's challenge to the inconsistent verdicts. In short, Mitchell cannot make any of the three showings—error, plain error, or miscarriage of justice—required to demonstrate plain error meriting reversal or vacatur of his conviction.

B.

As for Mitchell's challenge to the seven-level enhancement of his sentence, that claim must also fail. Because, as noted above, Mitchell did not object to the seven-level enhancement of his sentence below, we review the adjustment for plain error. *United States v. Stevenson,* 68 F.3d 1292, 1294 (11th Cir.1995). Mitchell claims that the seven-level enhancement for discharge of a firearm constitutes error because (1) he was acquitted of carrying or using a firearm under section 924(c) in the commission of the robbery, so an enhancement of his conviction on Count One for the discharge of a firearm amounts to a sentence "based upon the very conduct [Mitchell] was found not guilty of under Count Two[,]" Appellant's Brief at 11, and (2) Mitchell did not discharge the firearm, and the party that did so fired it accidentally. We find Mitchell's arguments to be without merit.

14

First, in sentencing Mitchell, the district court properly considered the count on which Mitchell was convicted, not the charge of which he was acquitted. Indeed, for purposes of sentencing Mitchell on Count One, Mitchell's acquittal on Count Two was irrelevant. Considering Mitchell's conviction on Count One, we note that the jury found Mitchell guilty of armed robbery in violation of section 2113(d). To do so under the jury instructions the district court gave, the jury had to conclude that Mitchell either "assaulted or put in jeopardy the life of some person by the use of a dangerous weapon or device while engaged in taking the property or money." Moreover, the evidence was plainly sufficient to support this conclusion. Section 2B3.1(b)(2)(A) of the Sentencing Guidelines provides for a seven-level increase to the base-offense level applicable to robbery sentences where "a firearm was discharged." U.S. Sentencing Guidelines Manual § 2B3.1(b)(2)(A). The district court did not err in simply applying the appropriate Sentencing Guideline.

Nor do we find merit in Mitchell's argument that the enhancement should be reversed because the gun that discharged during the robbery was carried by a co-conspirator. The Sentencing Guidelines provide that specific offense characteristics, such as the firearm-discharge provision in the Sentencing Guideline pertaining to robbery (U.S. Sentencing Guidelines Manual, § 2B3.1(b)(2)(A)), "shall be determined on the basis of, [among other things,] in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." United States Sentencing Guidelines Manual § 1B1.3(a)(1)(B). In this case Ruger squarely testified that Hazel had provided Mitchell and him with guns at the same time at a robbery-planning meeting the day before the robbery. This alone made the likelihood of a gun discharging objectively reasonably

15

foreseeable. Moreover, Mitchell was robbing a federally insured bank that was protected by an armed guard. Indeed, on the facts of this case, the guard was disarmed at gunpoint. The district court could therefore find that it was objectively reasonably foreseeable that, in the course of armed robbery of an armed facility, the discharge of a weapon was likely to occur. *See United States v. Molina,* 106 F.3d 1118, 1122 (2d Cir.1997) (holding that "it was ... reasonable for [the defendant] to foresee that, in an encounter between armed robbers and armed guards protecting an armored car, a shooting was likely to occur."); *see also United States v. Triplett,* 104 F.3d 1074, 1083 (8th Cir.) ("The Guidelines do not require that the defendant, as opposed to an accomplice or co-conspirator, have fired the weapon. Rather, there merely must be evidence ... that a weapon was discharged during the robbery."), *cert. denied,* --- U.S. ----, 117 S.Ct. 1837, 137 L.Ed.2d 1042 (1997). Accordingly, we can find no error in the district court's seven-level enhancement of Mitchell's sentence and need not proceed to the other inquiries under plain-error analysis.

IV.

We therefore uphold Mitchell's conviction under 18 U.S.C. § 2113(d), and conclude that the district court properly enhanced Mitchell's sentence by seven levels under the Sentencing Guidelines. Accordingly, the judgment of the district court must be, and is, AFFIRMED.

16