[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10069
Non-Argument Calendar

_____

D. C. Docket No. 04-00007-CR-HL-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES MOTES, III,
a.k.a. Charlie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(September 27, 2006)**

Before TJOFLAT, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Charles Motes, III, appeals his convictions and concurrent 30-month

sentences for two counts of making false statements on federal firearms records, in

violation of 18 U.S.C. § 924(a)(1)(A) and 2. On appeal, Motes challenges the sufficiency of the evidence to support his convictions. He also raises the following sentencing claims: (1) that the district court's consideration of acquitted conduct in calculating the Guidelines range and imposing sentence violated his due process rights and United States v. Booker, 543 U.S. 220 (2005), and (2) that his sentence was unreasonable in light of 18 U.S.C. § 3553(a). After careful review, we affirm.

The relevant facts are straightforward. On May 27, 2004, Motes and co-defendants Marvin King and Thomas Frazier were charged with one count of conspiring to provide false statements on federal firearms records, in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A) (Count One), and eight counts of aiding and abetting each other or other persons, both known and unknown to the grand jury, to make false statements on federal firearms records, in violation of 18 U.S.C. § 924(a)(1)(A) and 2 (Counts 2 through 9). More specifically, the indictment alleged that from January 1, 2001 to September 1, 2002, the defendants conspired to cause false statements to be made on ATF Form 4473 and, on eight separate occasions, aided and abetted in the making of false representations of the name of the purchaser of 19 firearms on this form. Frazier pled guilty to Count One and Motes and King proceeded to a joint jury trial.

At trial, the government presented the testimony of Frazier and various other cooperating individuals who were involved in the transactions at issue, as well as the testimony of several law enforcement officials who conducted the subsequent investigation. Because Motes was found guilty of Counts Eight and Nine, we restrict our discussion mainly to the government's evidence as to the August 22, 2002 and August 27, 2002 transactions, for purposes of considering Motes's challenge to the sufficiency of the evidence.

During the relevant time period of the charged conspiracy, Motes and Frazier, through the use of two "straw purchasers" named Debra Ann Molden and Samual James Almond, purchased 19 firearms, which they then sold to others. Most of these purchases took place at a pawnshop in Moultrie, Georgia named Kings Jewelry Pawnbroker Shoes, Inc. ("Kings Jewelry"), which was owned by King and was registered as a federally licensed firearms dealer. Both Molden and Almond testified for the government.

On August 22, 2002, Motes drove Almond to Kings Jewelry and provided him with money to purchase one firearm. As of that date, Almond previously had "straw purchased" four other firearms at Kings Jewelry, on behalf of Frazier and Motes, each time using money provided by Frazier or Motes and each time completing an ATF Form 4472 that said he (Almond) was the actual purchaser of

the firearms. During the August 22nd purchase, Almond again falsely completed an ATF Form 4472, indicating that he was the actual purchaser of a Bryco Jennings, model nine, 9 mm. pistol, and paid for the gun with money supplied by Motes. In a similar transaction five days later, Almond purchased two more Bryco Jennings, model nine, 9 mm. pistols, again with money given to him by Motes. Almond completed two more ATF forms stating that he was the actual purchaser. After both of these purchases, Almond delivered the firearms to the convenience store that Motes owned.

After the government rested, Motes moved for a judgment of acquittal, arguing that Almond had testified that nobody had asked him to lie on the ATF Forms 4472, and thus that the jury could not find that Motes had <u>caused</u> the false statements to be made. The district court denied this motion. In support of his own defense, Motes testified that he had not asked anyone to purchase guns on his behalf, or to lie on an ATF form. Motes then renewed his motion for judgment of acquittal, which the district court again denied.

Although the jury acquitted Motes on the conspiracy counts and the counts alleging "straw purchases" that occurred prior to the August 22nd and August 27th transactions described by Almond, the jury found Motes guilty on Counts Eight and Nine. Motes then proceeded to sentencing.

The presentence investigation report ("PSI") assigned Motes a base offense level of 12 and recommended a four-level enhancement because Motes's conduct involved between 8 and 24 firearms, pursuant to U.S.S.G. § 2K2.1(B)(1), and a two-level enhancement based on Motes's status as an organizer and/or leader of the crime, pursuant to U.S.S.G. § 3B1.1(c)). With an adjusted offense level at 18 and a criminal history category II, Motes faced a Guidelines sentencing range of 30 to 37 months' imprisonment. The maximum term of imprisonment for each count was 5 years' imprisonment.

Motes objected to the PSI and argued, in pertinent part, that: (1) he should not be held accountable for all 19 of the firearms alleged in the indictment, since his convictions involved the purchase of only three firearms; and (2) his sentence should not be enhanced because he was a leader or organizer of the crime. At the sentencing hearing, Motes again objected to the PSI, arguing that the offense-level enhancements violated Booker because the jury had found him guilty as to charges involving only three guns and had acquitted on the conspiracy count, thus rejecting that he was a leader of the scheme.

Over Motes's objections, the district court sentenced Motes to a low-end sentence of 30 months' imprisonment on each count, to run concurrently. In imposing sentence, the district court noted that the Guidelines were "advisory" and

5

found that the Guidelines range was justified because Motes "was responsible for all the guns" and he had "a leadership role." The court further noted that the sentence was "appropriate" in light of the 18 U.S.C. § 3553(a) factors and the totality of the circumstances. This appeal followed.

First, Motes challenges the sufficiency of the evidence to support his convictions. A properly preserved sufficiency of the evidence claim is reviewed de novo. United States v. McDowell, 250 F.3d 1354, 1361 (11th Cir. 2001). In determining whether the evidence is sufficient to support a conviction, we view the evidence in the light most favorable to the government and decide whether a reasonable juror could have reached a conclusion of guilt beyond a reasonable doubt. United States v. Calderon, 127 F.3d 1314, 1324 (11th Cir. 1997). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Harris, 20 F.3d 445, 453 (11th Cir. 1994).

To establish a violation of § 924(a)(1)(A), the government was required to prove that Motes knowingly made a false statement with respect to information that the law requires a federally licensed firearms dealer to keep. See 18 U.S.C. § 924(a)(1)(A). We have concluded that a principal who uses straw purchasers to purchase firearms on his behalf violates § 924(a)(1)(A). United States v. Nelson,

221 F.3d 1206, 1210 (11th Cir. 2000). Section 2 prohibits the aiding and abetting of this offense and punishes an aider and abetter as a "principal." See 18 U.S.C. § 2.

Almond testified that he falsely represented himself as the actual buyer of the firearms on August 22nd and 27th, the dates reflected in Counts Eight and Nine, respectively, and that he falsely filled out three ATF forms on those dates. Moreover, he said that he actually purchased the firearms for Motes, who provided him with the money to purchase the guns, took possession of the guns after the purchases, and on one occasion accompanied Almond into Kings Jewelry. Viewing the evidence in the light most favorable to the jury's verdict, as we are required to do, a reasonable juror could have found beyond a reasonable doubt that Motes violated § 924(a)(1)(A) by using a straw purchaser to purchase the firearms, even if Motes never expressly asked the straw purchaser to lie on the ATF forms. Nelson, 221 F.3d at 1210. Motes does not cite, and our own review of controlling precedent does not reveal, any case in which we have held that, in order to establish principal liability, the government must show that the aider or abettor expressly directed the straw purchaser to provide the false statements. Accordingly, we affirm his convictions.[1]

_____

[1]We also are unconvinced by Motes's argument that reversible error occurred when the jury reached inconsistent verdicts by acquitting him of the conspiracy charge but finding him guilty

7

Turning to Motes's arguments concerning the calculation of his offense level and resulting Guidelines range, "under an advisory Guidelines scheme, courts can continue to consider relevant acquitted conduct so long as the facts underlying the conduct are proved by a preponderance of the evidence and the sentence imposed does not exceed the maximum sentence authorized by the jury." United States v. Faust, 456 F.3d 1342, 1348 (11th Cir. 2006). "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." United States v. Trainor, 376 F.3d 1325, 1331 (11th Cir. 2004) (citations omitted).

Under our long-standing precedent, "[r]elevant conduct of which a defendant was acquitted nonetheless may be taken into account in sentencing for the offenses of conviction," as long as the government proves the acquitted conduct relied upon by a preponderance of the evidence, and the judge does not impose a sentence that exceeds what is authorized by the jury verdict. United States v. Duncan, 400 F.3d 1297, 1304-05 (11th Cir.), cert. denied, 126 S. Ct. 432 (2005). In fact, after Booker, it remains clear that a sentencing judge may continue to consider relevant acquitted conduct as part of an advisory Guidelines' scheme,

of two substantive counts. It is well-settled that so long as a guilty verdict is supported by sufficient evidence, as we have concluded the verdicts as to Counts Eight and Nine are, a conviction will be affirmed, even if the guilty verdict is inconsistent with the jury's verdict as to other counts. Cf. United States v. Mitchell, 146 F.3d 1338, 1344-45 (11th Cir. 1998).

8

"[f]or when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Id. at 1305 (citations omitted).

Through the testimony of numerous cooperating witnesses who participated in the gun trafficking scheme, the government satisfied its burden to show by a preponderance of the evidence the facts underlying the enhancements for both the possession of between eight and twenty-four firearms, not just the three firearms discussed in the two counts of the indictment for which Motes was convicted, and Motes's leadership role in the scheme. Moreover, Motes's ultimate sentence of 30 months' imprisonment was well below the 5-year maximum sentence authorized by the jury verdict of conviction on each of the two counts of providing a false statement on a federal firearms record. Finally, the district court expressly stated that it understood the Guidelines range to be advisory. On this record, we can discern no Booker error in the district court's calculation of the Guidelines range, including the court's imposition of enhancements for the number of firearms involved and Motes's leadership role in the offense.

Finally, we reject Motes's argument that his low-end sentence was unreasonable. We review the ultimate sentence imposed by the district court for reasonableness, and we "consider the final sentence, in its entirety, in light of the

§ 3553(a) factors." United States v. Valnor, 451 F.3d 744, 750 (11th Cir. 2006) (citations omitted). "Review for reasonableness is deferential." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). We "recognize that there is a range of reasonable sentences from which the district court may choose, and when the district court imposes a sentence within the advisory Guidelines range, we ordinarily will expect that choice to be a reasonable one." Id. The party challenging the sentence carries the burden of proving that the sentence was unreasonable in light of both the record and the § 3553(a) factors. Id.

Pursuant to the district court's correctly calculated offense level and criminal history category, the Guidelines recommended a range of 30 to 37 months' imprisonment. The district court heard Motes's mitigating argument at the sentencing hearing, during which Motes urged the court to impose a sentence below the Guidelines range because the criminal history category "overstate[d] the likelihood that Mr. Motes is a danger, has been a danger, or will be a danger to anyone in the future." The court also heard from Judge William McIntosh, the mayor of Moultrie, who testified as a character witness and described his longstanding relationship with the Motes family, opined that Motes's prior convictions were "totally out of character," and stated that Motes had a good reputation in Moultrie. Finally, Motes presented the testimony of his uncle who

stated that Motes was a provider for his family and an outstanding member of the community.

In addition to hearing Motes's mitigating argument and evidence, most of which concerned "the nature and circumstances of the offense and the history and characteristics of the defendant," within the meaning of § 3553(a)(1), the district also had before it the parties' legal arguments and the PSI's calculations, which outlined "the kinds of sentences available," as discussed in § 3553(a)(3). In imposing sentence, the district court specifically noted that the Guidelines' range was advisory and that the 30-month sentence was "appropriate" in light of the § 3553(a) factors and the totality of the circumstances. From our own review of the record, it is clear Motes's low-end sentence, which was appreciably below the 60-month statutory maximum he faced, was eminently reasonable.

**AFFIRMED.**