[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13854

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANDERSEN RABEL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20058-KMW-2

_____

Before JORDAN, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Andersen Rabel appeals his conviction for possession of an unregistered firearm in violation of 26 U.S.C. section 5861(d). After review, we affirm.

## FACTUAL BACKGROUND

On January 21, 2022, an undercover agent working for the Miami-Dade Police Department visited Miami Gun Shops, a licensed firearms dealer the agent had reason to believe was selling unregistered firearm silencers. As a federal firearms licensee ("FFL"), Miami Gun Shops could manufacture and sell firearms, including silencers, so long as it complied with federal law. Rabel worked at Miami Gun Shops and was designated as a "responsible person" at the store, meaning he could direct the business's firearm policies and practices.

The agent, who was wearing a concealed camera, approached Rabel and asked for the store's owner, Manuel Reguiera. Reguiera was not at the store, so Rabel called him. Rabel gave the phone to the agent, and the agent asked Reguiera if he could purchase "soda cans"—slang for silencers. After speaking with Reguiera about the agent's request, Rabel brought the agent to the back of the store to complete the sale.

Once Rabel and the agent were in the back of the shop, Rabel retrieved four packages labeled "9.5mm Monocore w[ith]

Booster." The agent bought four of these "kits" from Rabel. Each of the kits contained four items. First, the kits contained a hollow metal tube that had an open hole on one end and a closed end cap on the other. These tubes contained monocore "baffling material" that separated the inside of each tube into multiple small chambers. Second, the kits contained a "Nielsen device," also called a "booster," that was attached to the open end of the metal tube. Third, the kits contained a replacement end cap with a hole drilled through it that could be swapped with the closed cap attached to the tube. And fourth, the kits contained an Allen wrench that allowed the buyer to swap the caps. Before completing the sale, the agent asked Rabel if all four kits came with the replacement end cap. Rabel confirmed they did. The kits did not, however, have serial numbers on them and were unregistered. Rabel did not perform a background check on the agent and did not record the sale.

## PROCEDURAL HISTORY

A grand jury later indicted Rabel, Reguiera, and Miami Gun Shops on several charges related to the unlawful possession and sale of firearms. In short, the indictment alleged that the kits Rabel sold to the agent were silencers, and therefore firearms, that were subject to federal regulation.[1] Relevant to this appeal, Rabel was indicted on one count of possession of an unregistered firearm in violation of 26 U.S.C. section 5861(d) ("Count Ten"); one count of

---

[1] A "firearm" includes "any silencer . . . as defined in section 921 of title 18, United States Code." 26 USC § 5845(a).

transfer of an unregistered firearm in violation of 26 U.S.C. section 5861(e) ("Count Eleven"); and one count of failure by a federally licensed dealer to keep proper records in violation of 18 U.S.C. section 922(b)(5) ("Count Twelve").

Rabel moved to dismiss the indictment. As evidenced in his motion, Rabel's defense largely centered on his claim that the tubes included with the kits were legal "solvent traps" used to "capture cleaning solvent." He conceded that once the closed end cap was swapped for the replacement cap the tube operated as a silencer, but he argued that the tubes were not silencers until a person makes that swap. And building on this argument, he argued that Count Ten had to be dismissed because his position as a responsible person at an FFL allowed him to possess solvent traps that, even if they could be turned into silencers, weren't converted yet. The district court found that the issues raised by Rabel in the motion presented factual questions for the jury and therefore denied it.

Both Rabel and the government filed motions in limine. Rabel moved to prevent the government from utilizing text messages and a video it retrieved from his cellphone. The video, which was sent to Rabel over text message, showed an unidentified person firing a gun with a silencer attached. Rabel responded to the video by saying that the "solvent trap" in it was "real quiet."

Rabel argued the text messages and video were unfairly prejudicial and could confuse the jury because they would lead the jury to believe that solvent traps didn't have to be modified to work as silencers. Further, he argued that he was not disputing that solvent

22-13854                Opinion of the Court                5

traps could be turned into silencers, and, to the contrary, that it was legal to do so if they were properly registered. He also argued that the probative value of this evidence was weakened by the fact that the jury would not know whether the silencer in the video was legally converted into a silencer. And he argued that a video showing someone shooting a firearm with a silencer attached would prejudice the jury. The government argued that the video and text messages were admissible under Federal Rule of Evidence 404(b) because Rabel's use of the term "solvent trap" to refer to a silencer was relevant to whether he knew the kits were in fact silencers.

The government's motion sought to prevent Rabel from introducing evidence, including expert testimony, that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") supposedly changed its enforcement practices and legal position on silencer conversion kits—including kits that allow buyers to convert solvent traps into silencers. This evidence included a letter issued by ATF to an unidentified individual about a month before Rabel made his sale that indicated ATF determined silencer conversion kits themselves qualify as silencers. It also included two letters that groups of Senators sent to ATF asking about ATF's perceived policy change. The government argued that Rabel did not allege he relied on this evidence and that it was irrelevant to whether Rabel knew that the kits he sold were in fact silencers. Rabel responded that this evidence would show that ATF's apparent policy change left the public confused about the legal status of solvent traps and conversion kits and that this confusion was relevant to whether

Rabel knew that ATF considered conversion kits and solvent traps to be firearms.

At a status conference before trial, the district court denied Rabel's motion to exclude the government's rule 404(b) evidence. As to the government's motion in limine, the district court found that the evidence related to ATF's perceived policy change on conversion kits was not relevant and granted the motion.

At trial, the government offered the video recording of the sale through the testimony of the agent who visited Miami Gun Shops. The agent testified about his visit to the store, his conversation with Reguiera over the phone, and his transaction with Rabel. He also testified about a previous visit to Miami Gun Shops during which he discussed buying silencers from Reguiera. During this visit, Rabel walked in on the meeting between the two while Reguiera was disassembling a silencer to show the agent.

The government also offered the testimony of Special Agent Andrea Randou, who extracted data from Rabel's cellphone. Randou testified about a text message conversation between Rabel and another employee of Miami Gun Shops. As part of this exchange, Rabel described the contents of a package Miami Gun Shops received as "definitely smaller in diameter but [with] loads [of] staggered expansion chambers." The other employee responded that his "can" was "bored at past that." Randou testified that in her experience "can" is often used to refer to a silencer. She also testified about the text message exchange in which Rabel reacted to the

22-13854                Opinion of the Court                7

video of the individual firing a silenced firearm and referred to the silencer as a "solvent trap."

Next, the government presented testimony from Cody Toy, an ATF firearms enforcement officer, who the government offered as an expert witness on firearm identification and silencer design and theory. Toy testified that silencers commonly consist of an outer body, a set of end caps, an expansion chamber, and baffles. He explained that baffling material reduces the sound created when a firearm is discharged. Toy was "not . . . aware of" any purpose baffles serve other than silencing the sound of a firearm. He also explained that the Nielsen device included in the kit is used to counteract the weight a silencer adds to a firearm's barrel and allows a firearm to operate normally when a silencer is attached. Like his testimony about the baffling material, Toy was "[n]ot . . . aware of" any purpose a Nielsen device serves other than allowing a silenced firearm to shoot properly. Finally, Toy explained that he tested one of the kits Rabel sold to the agent. The completed device reduced the sound a firearm made by about fourteen decibels.

Rabel moved for judgment of acquittal at the close of the government's case and argued that the government didn't present sufficient evidence to prove he knew the kits he sold were silencers. The district court found that there was sufficient evidence to allow the jury to infer Rabel's knowledge that the kits were silencers and denied the motion.

Then, Rabel presented his defense. Rabel presented the testimony of Christopher Robinson, who he offered as an expert

witness on firearms, silencers, and firearm cleaning.  Looking at one of the kits Rabel sold, Robinson opined that the device was a solvent trap and that the monocore baffle in the tube was used to catch debris when cleaning a firearm barrel.  To support his conclusion that the kits were solvent traps, Robinson noted the tubes did not have certain features, like foam or holes within the tube, that many silencers have.  Robinson conceded, however, that once the end caps within the kit were swapped the device operated as a silencer.

The jury found Rabel guilty of possessing an unregistered silencer, and not guilty of the other counts.  Rabel appeals his conviction.

## STANDARD OF REVIEW

We review a district court's ruling on a motion in limine for an abuse of discretion.  *United States v. Estrada*, 969 F.3d 1245, 1261 (11th Cir. 2020).  We generally review de novo the denial of a motion for judgment of acquittal based on the sufficiency of the evidence.  *United States v. Hernandez*, 433 F.3d 1328, 1332 (11th Cir. 2005).  "[W]e review the evidence presented at trial in the light most favorable to the government, and we draw all reasonable factual inferences in favor of the jury's verdict."  *United States v. Bergman*, 852 F.3d 1046, 1060 (11th Cir. 2017).

## DISCUSSION

Rabel challenges his conviction by arguing:  (1) the district court erred in denying his motion in limine and granting the government's; (2) the district court erred in denying his motion for

judgment of acquittal; and (3) the district court should have entered a judgment of acquittal because he could not be convicted of unlawfully possessing a firearm as the designated responsible person for his licensed firearms dealer.  We address each argument in turn.

### The District Court's Evidentiary Rulings

Rabel argues that he should have been allowed to offer evidence about the ATF's supposed policy change on the legality of solvent traps and silencer conversion kits.  He contends that this evidence would have shown a "change in the law" about which he and the public were given insufficient notice.  The ATF evidence, he says, would show that he lacked the requisite mens rea when he made the sale.  We disagree.

Relevant evidence is generally admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.

It is unlawful "to receive or possess a firearm which is not registered to [the person] in the National Firearms Registration and Transfer Record."  26 U.S.C. § 5861(d).  The term "firearm" includes "any silencer []as defined in" 18 U.S.C. section 921.  *Id.* § 5845(a).  Under section 921, "any device for silencing, muffling, or diminishing the report of a portable firearm, including any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and

any part intended only for use in such assembly or fabrication" is a "firearm silencer."  18 U.S.C. § 921(a)(25).

To prove a violation of section 5861(d), the government must show that:  (1) the defendant "possessed a 'firearm' within the meaning of 26 U.S.C. [section] 5845(a) of the National Firearms Act"; (2) he "knew the features of the firearm that brought it within the scope of the Act"; and (3) "the firearm was not registered to the defendant."  *United States v. Wilson*, 979 F.3d 889, 903–04 (11th Cir. 2020).  "The Supreme Court and this Court consistently have held that, although the requisite mens rea to prove a violation of [section] 5861(d) is 'knowledge,' that mens rea does not attach to each element of that offense."  *Id.* at 904.  "[T]he government . . . need not prove that the defendant knew the weapon was unregistered[,] . . . . that the defendant knew his possession of the weapon was unlawful[,] or that he knew 'what features define a "firearm" under 26 U.S.C. [section] 5845(a).'"  *Id.* (emphases omitted) (quoting *United States v. Ruiz*, 253 F.3d 634, 638 n.4 (11th Cir. 2001)).  The government only needs to "prove that the defendant was 'aware that his weapon possess[ed] *any* of the features detailed in 26 U.S.C. [section] 5845(a).'"  *Id.* at 904–05 (first alteration in original) (quoting *Ruiz*, 253 F.3d at 638).

Here, the district court properly concluded that Rabel's evidence relating to ATF's alleged policy change was irrelevant.  Even if this evidence would have shown ATF changed its position on the legality of kits like the ones Rabel sold, causing confusion about the legality of the kits among the public, the evidence would still

be irrelevant to the mens rea our precedent requires. The government did not need to prove that Rabel "knew his possession of the [kits] was unlawful." *Id.* at 904. It only needed to prove that Rabel knew that the kits had the features that made them silencers under the statute. *Id.* at 904–05. So, while Rabel maintains the evidence would have shown that he and the public did not have notice that the kits were illegal under the statute, that argument doesn't help him here. The district court properly excluded the evidence.

Rabel's challenge to the district court's denial of his motion in limine also fails. He argues that the district court should have excluded the text messages and video pulled from his phone because they were not relevant to an issue at trial. As Rabel frames the issue, the government only used this evidence to prove that Rabel knew that solvent traps could be converted into silencers, which he has never disputed. And he argues that the video prejudiced the jury against him, and that any unfair prejudice is underscored by the fact that silencers can be legally obtained, the silencer in the video might have been legal, and the government did not present evidence showing that Rabel was involved in the event depicted in the video. We find no error in the admission of this evidence.

Under Federal Rule of Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But rule 404(b) evidence can be used "for another purpose, such as

proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "The rule is 'one of inclusion which allows extrinsic evidence unless it tends to prove only criminal propensity.'" *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (alteration accepted) (quoting *United States v. Stephens*, 365 F.3d 967, 975 (11th Cir. 2004)).

"We employ a three-part test to determine whether a district court abused its discretion by admitting evidence of prior bad acts under Federal Rule of Evidence 404(b)[.]" *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir. 2010). "First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act." *Id.* (quoting *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc)). And "[t]hird, the probative value of the evidence must not be 'substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of [r]ule 403.'" *Id.* (quoting *Miller*, 959 F.2d at 1538). "In reviewing issues under [r]ule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Brown*, 441 F.3d 1330, 1362 (11th Cir. 2006).

The district court appropriately admitted the text messages and video. First, the evidence was clearly relevant to whether Rabel knew the kits were silencers. Throughout his trial and

appeal, Rabel has consistently maintained that he believed that the kits were solvent traps. Evidence of Rabel referring to an apparent silencer as a solvent trap was directly relevant to whether Rabel's belief was sincere. Rabel appears to concede this much in his reply brief, stating that he does not argue the evidence wasn't relevant. He also doesn't dispute that he sent the message, so there was sufficient evidence that he sent it.

Finally, viewing this evidence in the light most favorable to its admission, its probative value as to Rabel's knowledge was not substantially outweighed by whatever prejudicial effect it had in depicting an individual discharging a firearm. Notably, Rabel was acquitted of more charges than he was convicted, showing that any possible prejudicial effect did not influence the jury. *Cf. United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985) (noting that a partial acquittal "is telling proof that [the defendant] was not prejudiced by the prosecutor's [improper] remarks" (quotation omitted)). The district court therefore did not abuse its discretion when it allowed this evidence to be presented.

### *Motion for Judgment of Acquittal*

Rabel next argues that the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he knew the silencers were firearms under the National Firearms Act, and he continues to argue that the devices were legal solvent traps that only became silencers once the end caps were swapped. The government responds that it presented sufficient

evidence that Rabel knew the kits had the features that allowed them to suppress the sound of a firearm. We agree with the government.

As discussed, the government only needed to prove that Rabel "knew the features of the firearm that brought it within the scope of the Act." *Wilson*, 979 F.3d at 903–04. It did not need to prove that Rabel knew what defines a firearm under the statute. *Id.* A "firearm silencer" is "any device for silencing, muffling, or diminishing the report of a portable firearm, including any *combination of parts*, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer or firearm muffler, and any part intended only for use in such assembly or fabrication." 18 U.S.C. § 921(a)(25) (emphasis added).

A district court must deny a motion for judgment of acquittal based on the sufficiency of the evidence "if 'a reasonable factfinder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt.'" *United States v. Thompson*, 610 F.3d 1335, 1337 (11th Cir. 2010) (quoting *United States v. Descent*, 292 F.3d 703, 706 (11th Cir. 2002)). Because Rabel was found guilty, we view the evidence in the light most favorable to the government and the jury's verdict. *Bergman*, 852 F.3d at 1060.

First, there was sufficient evidence that the kits were a "combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer" to "silenc[e], muffl[e], or diminish[] the report of a portable firearm." 18 U.S.C. § 921(a)(25). The government offered evidence that multiple

features of the kits—the baffles and the Nielsen device—only served to muffle the sound of a firearm discharge and allow a firearm to operate normally with a silencer attached.  It also offered evidence that once the end caps were swapped the device could reduce the sound of a firearm by about fourteen decibels.  And Rabel's own expert testified that once the end caps were swapped the kit operated as a silencer.  Finally, the government presented testimony that Rabel had previously witnessed the agent buying silencers from Reguiera.  The jury therefore had more than enough evidence before it to determine that the kit was a silencer beyond a reasonable doubt.

Second, the government also presented extensive evidence that Rabel knew that the kits were silencers.  The evidence showed that Rabel sold the kits after the agent asked to buy "soda cans" and that "soda can" is known slang for silencers.  One text message string presented at trial showed another individual using the term "can" to Rabel before he made the sale to the agent, which demonstrated that he was familiar with the term at the time.  The evidence also showed that Rabel knew the contents of each kit.  The package for each indicated that they contained a "[m]onocore w[ith] booster," so a jury could find that Rabel knew they contained silencers given that these two components were used as parts for a silencer.  And Rabel clearly knew each package contained the swappable end caps that allowed the buyer to make a fully functioning silencer—he assured the agent who purchased the kits that they did.  Finally, while Rabel argued that he thought the packages contained solvent traps, the government's rule 404(b)

evidence called the sincerity of that belief into question. Given this evidence, the district court correctly denied Rabel's motion for judgment of acquittal.

Rabel's counterarguments don't compel a different conclusion. He repeats his contention that the government had to prove he knew the tubes were "in fact firearms that come within the ambit" of the statute and implies that the statute contains a scienter requirement. But, as we've already explained, under the possession-of-an-unregistered-silencer statute, he only needed to know the kits had the features that made them silencers. *See Wilson*, 979 F.3d at 904.

Rabel also argues that the swappable end caps don't make the kits silencers because, as he sees it, the tubes aren't silencers until the end caps are actually swapped. But that argument is contrary to the statute's language, which defines the term "silencer" to mean "any combination of parts, designed or redesigned, and intended for use in assembling or fabricating a firearm silencer"—and not just the assembled product. 18 U.S.C. § 921(a)(25).

Because a jury could find beyond a reasonable doubt that Rabel knew the kits had the features that made them silencers, the district court properly denied Rabel's motion for a judgment of acquittal.

### Rabel's Status as a Responsible Person

Finally, Rabel argues that the district court should have entered a judgment of acquittal because Miami Gun Shops has a license to manufacture and distribute firearms. He contends that,

because Miami Gun Shops has an FFL license and he was a designated responsible person, he could possess solvent traps and weapon parts that were used to make firearms and could not illegally possess the kits he sold. Rabel also makes passing reference to the fact that he was acquitted of the other two counts he faced at trial and argues his acquittals are inconsistent with his guilty verdict.

The problem for Rabel, as he recognizes in his reply brief, is that an unregistered silencer cannot be legally possessed even by a manufacturer. *See* 27 C.F.R. § 479.101 ("Each manufacturer, importer, and maker shall register each firearm he manufactures . . . ."). Rabel's entire challenge relies on his argument that the kits were not themselves firearms subject to regulation. But, as we've already explained, a silencer is a firearm under the statute, 26 U.S.C. § 5845(a), and there was sufficient evidence at trial showing that the kits were in fact silencers. Because Rabel hasn't demonstrated that Miami Gun Shops was entitled to possess these silencers, we are unpersuaded that his status as the store's responsible person has any bearing on his conviction.

Rabel's reference to the fact that he was acquitted of the other counts at trial doesn't convince us otherwise. "[I]nconsistent jury verdicts are generally insulated from review because a jury may reach conflicting verdicts through mistake, compromise, or lenity[.]" *United States v. Green*, 981 F.3d 945, 960–61 (11th Cir. 2020) (quotation omitted). "[A]s long as the guilty verdict is supported by sufficient evidence, it must stand, even in the face of an

inconsistent verdict on another count." *Id.* (quoting *United States v. Mitchell*, 146 F.3d 1338, 1345 (11th Cir. 1998)). Therefore, even assuming the verdicts are inconsistent, they do not compel us to vacate Rabel's conviction, and we find no error.

**AFFIRMED**.